```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

CANDACE SCOTT,                   §
                                 §
     Plaintiff,                  §
                                 §
v.                               §    CIVIL ACTION NO. H-10-1621
                                 §
THE CITY OF HOUSTON,             §
                                 §
     Defendant.                  §
```

MEMORANDUM AND ORDER

Pending in this employment discrimination suit is the City of Houston's ("Defendant") Motion for Summary Judgment (Document No. 29). After carefully considering the motion, response, reply, and applicable law, the Court concludes for the reasons that follow that the motion should be granted.

I.  Background

Plaintiff began working for Defendant at the Houston Public Library as an administrative assistant in 2005.[1] She was promoted to administrative specialist in August 2007 to work for Deputy Director Meller Langford in the Director's office.[2] In March 2008, Plaintiff was transferred to the Houston Area Library Systems

---

[1] Document No. 29, ex. 14-A at 42 (Exhibits 14-A to 14-E will hereinafter be referred to as "Scott Depo.").

[2] Id., exs. 2, 3, & Scott Depo. at 55.

("HALS") department,[3] where she continued as an administrative specialist until her indefinite suspension in September 2009.[4] Plaintiff brings this suit alleging discrimination on the basis of a disability, specifically asserting that while working at HALS from March 2008 to September 2009, "the City of Houston was aware that [she] was being diagnosed with an illness concerning [her] eyesight and concentration that affected [her] job performance[ ]. There were no provisions put in place by employer to accommodate my situation."[5] Defendant contends that Plaintiff was indefinitely suspended in accordance with City Policy because she received two consecutive below acceptable performance evaluations.[6]

---

[3] Id., Scott Depo. at 72.

[4] Document No. 29, ex. 1; id., Scott Depo. at 99.

[5] Document No. 25 (2d Am. Cmplt.).  Plaintiff's complaint states:  "This action is brought under Title VII of the Civil Rights [Act] of 1964 for employment," as well as under Title I of the ADA, although her only factual assertions pertain to discrimination on the basis of a disability.  Plaintiff does not allege any facts in her complaint or her response to summary judgment, much less point to any evidence, of a Title VII violation.  Moreover, Plaintiff's charge of discrimination filed with the EEOC alleged only discrimination on the basis of a disability.  Document No. 29, ex. 14-G at 9.  Plaintiff has failed to assert a Title VII claim, establish a prima facie case for it, or exhaust her administrative remedies under Title VII.  The Title VII claim is therefore dismissed.

[6] Document No. 29, ex. 10.

II.   Discussion

A.   Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Id. 56(c)(3).

3

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

B.   ADA Framework

The Americans with Disabilities Act (ADA) prohibits discrimination against employees on the basis of a disability. 42 U.S.C. § 12101 *et seq*. A plaintiff can establish a claim under the ADA either by producing direct or indirect evidence of discrimination. Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396 (5th Cir. 1995). If a plaintiff relies on indirect evidence, the

4

claim is analyzed using the burden shifting framework set out in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Daigle, 70 F.3d at 396. Under this framework, a plaintiff must make a prima facie case of discrimination by showing that: (1) she was disabled or was regarded as disabled; (2) she was qualified for the job; (3) she was subjected to an adverse employment action;[7] and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. Id. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action, producing some evidence in support thereof. Daigle, 70 F.3d at 396. The defendant's burden is satisfied if it "produces any evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." Id. (citation and quotation marks omitted). Once defendant satisfies this burden, plaintiff must show that the articulated reason is merely a pretext for discrimination. Id.; McInnis, 207 F.3d at 282.

---

[7] This element has also been stated to require a showing that plaintiff was subjected to an adverse employment action *because of the disability*. *See* McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279-80 (5th Cir. 2000).

5

C.   <u>Analysis</u>

Plaintiff cites to evidence that she was qualified for her job, and Defendant does not challenge this assertion.[8] Plaintiff further asserts that she suffered an adverse employment action when she was indefinitely suspended; this fact is undisputed.[9] The two elements of the prima facie case in dispute, therefore, are whether Plaintiff can properly be characterized as having a disability under the ADA and whether she was replaced or treated less favorably than a non-disabled employee.

   1.   <u>Disability</u>

Plaintiff asserts in response to Defendant's summary judgment motion that she can satisfy the first element of her prima facie case because she was *regarded* as disabled.[10] In support thereof,

---

[8] Document No. 35 at 8 (citing to Scott Depo. at 44 & 59).

[9] <u>Id.</u>

[10] <u>Id.</u> at 6-7. Defendant replies that Plaintiff cannot raise for the first time the "regarded as" claim in her response, when her complaint, *see* Second Amended Original Complaint (Document No. 25), alleges only an illness concerning her eyesight and concentration that affected her job performance, and a failure to accommodate. Document No. 36 at 2-3. The City is correct that a claim which is not raised in the complaint but only in response to a motion for summary judgment is not properly before the court. <u>Cutrera v. Board of Supervisors of La. State Univ.</u>, 429 F.3d 108, 113 (5th Cir. 2005). Nonetheless, giving the broadest possible interpretation to Plaintiff's Complaint, which she filed *pro se* before she retained counsel, and observing that the "regarded as" claim is Plaintiff's only argument against the motion, the claim will be evaluated.

she asserts the following facts by way of her own declaration.

- In January 2008, Plaintiff missed a day or two of work because of high blood pressure. Upon return to work, the Deputy Director of Library Operations, Meller Langford, met with Plaintiff, and, in the course of that meeting, Plaintiff informed Langford that she suffered from hypertension (high blood pressure) and was undergoing diagnosis for a condition that might be Lupus. Plaintiff states that Langford responded that Plaintiff might want to consider leaving the office because of its high pressure and stressful environment, to which Plaintiff informed Langford that she had worked in stressful jobs before and was able to cope and perform her job.[11]

- "Shortly thereafter," Plaintiff missed eight days of work due to an unspecified "minor illness," during which time Langford transferred Plaintiff to Houston Area Library Systems ("HALS") department.[12]

- At the beginning of Plaintiff's work at HALS, she had to take intermittent days off from work, using sick leave and FMLA, to attend a series of doctor's appointments. Wendy Willeford, the Interim Consultant, made comments to Plaintiff about her frequent absence, such as "why do you always have to miss work for doctor's appointment[s]?" and "why do your appointments have to be on a certain day each time?"[13]

- In December 2008, Plaintiff scheduled a meeting with Willeford to discuss an unspecified medical diagnosis, which Plaintiff thought might require an extended absence from work while she underwent radiation treatment. Plaintiff asserts that Willeford responded by stating, "[A]re we supposed to feel sorry for you?"[14]

- Plaintiff asserts that after Willeford learned of Plaintiff's medical condition, she began treating

---

[11] Document No. 35-1, ¶ 1.

[12] Id. ¶ 2.

[13] Id. ¶ 3.

[14] Id. ¶ 4.

- Plaintiff differently and objected to any idea Plaintiff put forward to "enhance [her] job performance." Specifically, Plaintiff asserts that Willeford would assign her tasks to be completed within a 24-hour deadline, which would coincide with Plaintiff's days off from work.[15]

- In January 2009, Plaintiff asserts that she met with the HALS Coordinator, Elizabeth Swan, and discussed the fact that she was having trouble with her eyesight, which might be related to her illness--not specifying to Swan the name of the illness but stating that she had seen five specialists over the course of five months.[16]

- Plaintiff states that after learning of her deteriorating vision, Swan "began assigning me more documents to proofread and requiring that I review more of her hand-written corrections to the department informational booklets we used to distribute within the HALS system, without regard to her poor penmanship."[17]

The term "disability" is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(2). Paragraph (3) states, in relevant part, that an individual is regarded as having a disability, "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or

---

[15] Id. ¶ 7.

[16] Id. ¶ 5.

[17] Id. ¶ 6. Plaintiff states that she does not believe Swan knew of her hypertension or discriminated against her because of it. Id.

not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3).

It is the perception of the relevant decisionmakers that must be considered in determining whether Plaintiff is regarded as disabled. Deas v. River West, L.P., 152 F.3d 471, 476 n.9 (5th Cir. 1998). In this case, there is no evidence showing that Langford was involved in any way in the decision indefinitely to suspend Plaintiff, which is the alleged adverse employment action in this case. Plaintiff was indefinitely suspended after working at HALS for more than a year. The evidence shows that Wendy Willeford and Rhea Brown Lawson were the only decisionmakers in the indefinite suspension action.[18] Plaintiff testified in her deposition that she did not believe Lawson ever regarded her as disabled.[19] Therefore, it is Willeford's perception that is relevant for this element of Plaintiff's prima facie case.

Plaintiff argues, but without any supporting evidence, that Willeford perceived Plaintiff to be disabled. The evidence shows that Willeford first met with Plaintiff on May 2, 2008 to discuss Willeford's concerns about deficiencies in Plaintiff's job performance at HALS, deficiencies that had nothing to do with

---

[18] Lawson, the Houston Public Library Director, received from Willeford the recommendation that Plaintiff should be indefinitely suspended, and then made the final recommendation to suspend Plaintiff after meeting with Plaintiff. Document No. 29, exs. 1, 4, 10.

[19] Id., Scott Depo. at 242.

9

Plaintiff's absences from work.[20]  Willeford raised her concerns about Plaintiff's job performance before Plaintiff requested leave under the Family and Medical Leave Act of 1993 ("FMLA") and well before Plaintiff told Willeford that she had a serious medical condition for which she was considering taking time off.[21]  There is no evidence, other than Plaintiff's speculative assertion, that Plaintiff's possible need of medical leave in December 2008 played any role in Willeford's decision to recommend Plaintiff's indefinite suspension in September 2009.  Moreover, Plaintiff presents no evidence that she ever in fact applied for extended medical leave or that she ever reported to Willeford that her illness impaired in any way her ability to perform her job.  The summary judgment evidence is that Willeford made her recommendation based on deficiencies in Plaintiff's performance, deficiencies that Willeford had informed Plaintiff about as early as May 2008 and that Plaintiff did not subsequently correct.  Plaintiff's conclusory assertions to the contrary are not sufficient to satisfy Plaintiff's burden.  *See* Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) ("This Court has cautioned that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." (citations omitted)).

---

[20] Document No. 29, exs. 4, 5.

[21] Id., exs. 4, 12, & 13.

There is likewise no evidence that Willeford's supervisor, Elizabeth Swan, perceived Plaintiff to be disabled.  While Plaintiff vaguely told Swan about problems with her eyesight possibly resulting from a medical condition, Plaintiff herself admits that she did not realize that her condition was causing her limitations at work, and there is no reason alleged or put in evidence showing why Swan should have thought so.[22]  Plaintiff fails to make a prima facie showing that she was regarded as disabled.

2. <u>Less Favorable Treatment</u>

Because Plaintiff failed to present summary judgment evidence that her employer or its decisionmakers regarded her as disabled, Plaintiff's prima facie case fails.  Plaintiff's case also fails, however, because she does not allege or offer proof that she was replaced by anyone, much less by a person without a disability.  Likewise, she does not plead nor present evidence that she was treated less favorably than any particular employee at HALS.[23]

---

[22] Plaintiff testified that it was only as she later looked back on events that she realized some of her problems at work were due to her illness. Document No. 29, Scott Depo. at 124, 155, 164-65, 185.

[23] Document No. 35 at 9. Plaintiff's conclusory response to summary judgment states that, "[o]nce in HALS, Scott was continuously subjected to disparate treatment in the form of the quality and quantity of her work assignments all targeting her perceived disabilities." <u>Id.</u> However, Plaintiff names no other person at HALS with whom she considers herself similarly situated and offers no proof comparing her work assignments to those of other similarly situated employees.

11

Plaintiff does claim that she was treated less favorably than Ms. Allison, who was the assistant to the Houston Public Library Director Rhea Brown Lawson, stating that Ms. Allison was not transferred to HALS.[24] Plaintiff provides no proof that Ms. Allison and Plaintiff were in any manner similarly situated. *See* Aldrup v. Caldera, 274 F.3d 282, 287 (5th Cir. 2001) (in disparate treatment claim, the employees must be in "nearly identical circumstances") (citing Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995)). Not only is there no evidence to show that they were in similar situations before Plaintiff's transfer to HALS, which in any event is not the alleged adverse employment action, but there is no evidence regarding Allison's performance, her evaluations, and her employment history at the Houston Public Library either before or after Plaintiff's transfer to HALS. Plaintiff fails to raise a fact issue on this element of her prima facie case as well.

### 3. Legitimate, Nondiscriminatory Reason

Notwithstanding Plaintiff's failure to raise a genuine issue of fact on the essential elements of a prima facie case, Defendant presents uncontroverted summary judgment evidence that it had a legitimate, nondiscriminatory reason for indefinitely suspending Plaintiff, namely, Plaintiff's below acceptable performance.

---

[24] Document No. 35 at 10.

Plaintiff received below acceptable scores for two consecutive evaluations--April 2007 to May 2008 and May 2008 to April 2009.[25]

In the first of these evaluations, given to and discussed with Plaintiff on July 11, 2008, Meller Langford, Plaintiff's supervisor at the Director's office, reported that Plaintiff needed to give more attention to details and that she did not always complete projects in a timely manner.[26] Langford also had previously met with Plaintiff in January 2008 for an informal evaluation, and told her that she wanted Plaintiff to make improvements in her punctuality, organizational skills, and communication of messages. Wendy Willeford had also previously met with Plaintiff at HALS on May 2, 2008, to express her concerns about Plaintiff's lack of prioritization, errors on reporting, and failure to ask clarifying questions.[27] Willeford's pre-meeting checklist shows that she expected also to advise Plaintiff to stop listening to her music while working and receive additional training, among other things.[28]

The second below acceptable evaluation, presented to Plaintiff on April 24, 2009, reported many of the same deficiencies recorded in her previous evaluation, such as frequent errors on reports and

---

[25] Document No. 29, exs. 6-7.

[26] Id., ex. 6 at 3.

[27] Id., ex. 5.

[28] Document No. 29, ex. 5. Plaintiff testified that she did listen to music while working. Id., Scott depo. at 133.

13

failure to meet deadlines. This evaluation also gave specific examples of problems, including that Plaintiff's database updates were slow (for example, the spelling of an employee's name was not corrected in the database for six weeks), that Plaintiff did not complete the Director's Sourcebook until two months after the deadline and that it contained errors, and that Plaintiff's travel reports often had three or more errors and were untimely filed.[29] Under Supervisor's Comments, the following was stated:

> Miss Scott has shown some improvement in communication by asking clarifying questions in the past few months and in the creation of time sheets. Her work shows an interest in appearance or unrequested decoration over content. Documents are still submitted incorrectly, often late and without necessary paperwork. There does not seem to be a basic understanding of how various parts of her job are related nor the ability to identify problems. Miss Scott requires more and closer supervision and correction than is appropriate for the time that she has been in this position.[30]

Plaintiff admits that she did not always meet deadlines and continued to make frequent errors on reports.[31] The formal evaluations and the records of informal meetings with Plaintiff identify areas in which Plaintiff's performance repeatedly was found not to be effective, both before and after she raised concerns about her possible illnesses. In sum, Defendant's

---

[29] Id., ex. 7 at 1, 4.

[30] Id., ex. 7 at 9.

[31] Id., Scott Depo. at 122-23, 143, 146, 154.

unrefuted summary judgment evidence establishes a legitimate, nondiscriminatory reason for Plaintiff's indefinite suspension.

### 4. Pretext

Plaintiff argues that Defendant's reason is pretextual because of contradictions in the stated reasons for Plaintiff's indefinite suspension.[32] Plaintiff asserts that Defendant is relying on the two consecutive substandard evaluations as its basis for indefinite suspension, but that Defendant asserted to Plaintiff that the reason was "misconduct," citing the discharge letter from Rhea Brown Lawson.[33] The Director stated the factual bases for indefinitely suspending Plaintiff as follows:

> Ms. Scott's two most recent Employee Performance Evaluations ("EPE") reflect an overall rating performance of less than effective. On July 11, 2008, Ms. Scott received a rating of 2.53 (Needs Improvement). Prior to receiving her second evaluation, it was explained to Ms. Scott that her job performance needed to improve and that she would be re-evaluated. On April 24, 2009, she received the second evaluation and her overall appraisal rating was 2.44, again falling below the effective rating of three (3). Based on the two below standard EPE's, Ms. Scott is eligible for an indefinite suspension under City policy. As a civil-service protected employee, Ms. Scott had thirty (30) days after receiving her EPE in which she could file a grievance to challenge her

---

[32] Document No. 35 at 11.

[33] Id.

>ratings, which she did, however, Ms. Scott withdrew the grievance prior to the Step II meeting.[34]

The Director's letter then goes on to explain the legal basis for her action, citing and quoting City Policy that declares indefinite suspension as an authorized disciplinary action that may be taken when an employee has two consecutive evaluations below acceptable. This is the "misconduct" that the Director specifically referenced. The Director's letter is not internally inconsistent and Plaintiff has raised no fact issue on pretext.

### III. Order

For the foregoing reasons, it is

ORDERED that Defendant City of Houston's Motion for Summary Judgment (Document No. 29) is GRANTED and all claims are DISMISSED WITH PREJUDICE.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 12th day of September, 2012.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[34] Document No. 29, ex. A.